UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
REGUS MANAGEMENT GROUP, LLC,
a Delaware limited liability company, and
RGN-NEW YORK XLI, LLC, a Delaware
limited liability company,                                    Case No. 19-cv-6766

                                    Plaintiffs,

                    - against -

JULIAN PEREZ, ALLISON MCCARTHY,
ARIEL ALCANTARA, and HEAVY GRIND
STUDIO, LLC, a New York limited liability
company,

                                    Defendants.
-------------------------------------------------------X

## COMPLAINT

Plaintiffs, REGUS MANGAGEMENT GROUP, LLC ("Regus") and RGN-NEW YORK

XLI, LLC ("RGN") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby

sue Defendants, JULIAN PEREZ ("Perez"), ALLISON MCCARTHY ("McCarthy"), ARIEL

ALCANTARA ("Alcantara"), and HEAVY GRIND STUDIO, LLC ("Heavy") (collectively all

Defendants will hereinafter be referred to as "Defendants") and state as follows:

1.      Defendants acted in concert to defraud Plaintiffs of money and services exceeding

$160,000 related to RGN's office suites located at 1501 Broadway, New York, New York.  In

addition, Plaintiffs maintain possession of personal property related to the unauthorized venture

run from RGN's property and Plaintiffs seek to determine ownership of such property or

otherwise dispose of the property.

2.      This Court has jurisdiction over the parties and venue is proper in New York

County under 28 U.S.C. § 1332 and 28 U.S.C. § 1391 because Defendants reside and are

domiciled in the state of New York and at least one defendant resides and is domiciled in this judicial district.  In addition, the fraudulent acts and other events which make up the basis of Plaintiffs' claims herein took place in New York County, New York.  Moreover, the personal property (the "Personal Property") at issue is located in New York County, New York.

3.      Plaintiffs are citizens of Texas and Delaware, and all Defendants are citizens of New York.  The damages sought exceed $75,000.00.

4.      In addition, Plaintiffs request that the Court exercise supplemental jurisdiction under 28 U.S.C. §1367 over any claims which do not meet the amount in controversy threshold as the facts underlying those claims form part of the same case or controversy as the claims where the Court has original jurisdiction.

5.      Regus is a Delaware limited liability company that is registered to do business in New York.  The only members of Regus are Michael Osburn and Darin Harris.  Both Michael Osburn and Darin Harris are domiciled in and are citizens of Texas.  Therefore, Regus is a citizen of Texas.

6.      RGN is a Delaware limited liability company registered to do business in New York.  The sole member of RGN is RGN-Holdings, LLC.  The sole member of RGN-Holdings, LLC is Regus Corporation, which is a Delaware corporation with its principal place of business located at 15305 Dallas Parkway, Suite 400, Addison, Texas 75001.  Therefore, RGN is a citizen of both Texas and Delaware.

7.      Perez is a resident and is domiciled in New York, and therefore a citizen of New York, with a last known address of 2046 Gates Avenue, 3R, Ridgewood, New York.

8.      McCarthy is a resident and is domiciled in New York, and therefore a citizen of New York, with a last known address of 2046 Gates Avenue, 3R, Ridgewood, New York.

9.      Alcantara is a resident and is domiciled in New York, and therefore a citizen of New York, with a last known address of 2034 Grand Concourse, Apt. 5D, Bronx, New York.

10.      Heavy is a New York limited liability company using the address 149-25 Jamaica Avenue, 2 FL, Suite 3, Jamaica, New York as its entity address.  The sole member of Heavy is Michael Rivera, who resides and is domiciled in New York, and therefore a citizen of New York. Therefore, Heavy is a citizen of New York.

## GENERAL ALLEGATIONS

11.      RGN provides office space rentals and related services to its clients who desire to utilize RGN's office space in New York.

12.      Regus is affiliated with RGN and employs the individual employees necessary to manage the office space rental and related services for RGN.  At all times material, Regus was an authorized agent for RGN for purposes of conducting business on RGN's behalf and for the benefit of RGN related to the office rental business.  Regus is charged with conducting the daily business operations of RGN's office rental business.

13.      Perez is a former employee of Regus who, at all times material, worked as a Community Manager Team Leader or a Community Manager for Regus in RGN's Times Square, New York location.

14.      McCarthy is a former employee of Regus who worked as a Community Manager for RGN's Park Avenue, New York location.

15.      Alcantara is a former employee of Regus who worked as a Community Associate for Regus in RGN's Madison, Forest Hills and Brooklyn, New York locations.

16.      Heavy is a New York limited liability company that utilized RGN's New York office space and services without paying for same.

17.     In Perez's and McCarthy's roles as Community Managers, they had access to Plaintiffs' business records related to office space rentals, vacancies, available services, and pricing for rentals and ancillary services.  Perez and McCarthy also had access to Plaintiffs' contracts with clients who utilized RGN's office rentals and related services.

18.     As an employee of Regus, Alcantara also had access to Plaintiffs' business records and was knowledgeable about Plaintiffs' business model including the prices charged for office space rentals and related services.

19.     In and around May 17, 2018, Perez and McCarthy fabricated a rental contract to give the appearance to Plaintiffs that its new client ("New Client") would be utilizing three (3) offices in RGN's Times Square location, located at 1501 Broadway, 12th Floor, New York, New York, when in reality, New Client would only be utilizing and paying for two (2) offices.  At the time, McCarthy was no longer employed by Regus.

20.     The extra office, which Perez and McCarthy falsely attributed to the New Client, was office number 12026.  By adding this extra office to the contract with a legitimate client, Perez was able to remove this office from Plaintiffs' rental pool and Defendants used the office without any compensation to RGN.  This misrepresentation gave the appearance to Plaintiffs that space 12026 was rented and New Client was paying for the use.

21.     At around the same time, Perez and McCarthy falsely reported to New Client that in order to move into Plaintiffs' rental space on New Client's desired move-in date, New Client would need to enter into a sublease with McCarthy because she was the current client using the office space known as 12113.  Unbeknownst to New Client, McCarthy was a former employee of Regus and fiancé of Perez, and the claim that McCarthy was an existing client of Plaintiffs with rights to any office space was completely false.

22.      Perez and McCarthy tricked New Client into paying McCarthy $3,581.58 for the fictitious sublease.  Upon discovery of this fraud upon New Client, Plaintiffs repaid New Client the $3,581.58 swindled by Perez and McCarthy.

23.      In addition, Perez secretly removed two (2) additional offices – 12020 and 12032 – from Plaintiffs' rental pool by not showing the office spaces to prospective clients and not converting office 12020 from its prior use into sellable space.

24.      Office 12020 was previously used as a recording studio by a prior tenant.  After the tenant breached the rental agreement and abandoned the office, Perez purposefully kept 12020 as a recording studio instead of converting it back to sellable space so that Defendants could use office 12020 without paying Plaintiffs for its use.  Perez, without Plaintiffs' knowledge or authorization, refused to show office 12020 to prospective clients and instead kept this office for Defendants' own purposes.

25.      In addition, Perez falsified documents which led Plaintiffs to believe that office 12024 was also unavailable to rent.

26.      The offices which Perez secretly removed from Plaintiffs' rental pool – 12026, 12020, 12024 and 12032 – were utilized by Defendants for their own purposes to the detriment of Plaintiffs.   Specifically, Defendants used the offices without Plaintiffs' knowledge or authorization and never paid Plaintiffs for the use of these offices.

27.      Once Perez caused the removal of offices 12026 and 12024 from Plaintiffs' rental pool, Defendants converted that space into a music recording studio ("Recording Studio").

28.      The purpose of securing space for the Recording Studio was to commence Perez, Alcantara and McCarthy's illegitimate business enterprise of allowing Heavy and others to utilize the space to run a commercial recording studio without paying for use of the same.

29.     The unauthorized enterprise created by Perez, Alcantara and McCarthy included operating Heavy as a business from the RGN's office space and offering the public music recording, videography, photography and other services while using RGN's property and services without paying Plaintiffs for such use.

30.     In addition, Defendants allowed Heavy's principals and others to utilize the Recording Studio for their own endeavors without paying Plaintiffs for such use.

31.     Furthermore, Defendants, using Perez's position as Community Manager/Community Manager Team Leader to defraud Plaintiffs, caused all of the costs related to the Recording Studio including, without limitation, painting, repairs, and moving expenses to be billed to Plaintiffs as if they were legitimate costs and expenses related to managing the building for Plaintiffs' rental business.  Plaintiffs unknowingly paid for these costs and expenses.

32.     In addition, in order to receive free contracting services to build out the Recording Studio to Defendants' specifications, Perez provided the contractor, who was to do the build-out, with free office space during the construction period.  The free space was not disclosed to, or authorized by, Plaintiffs and this unauthorized transaction improperly removed additional space from Plaintiffs' rental pool.  Plaintiffs received no compensation for Defendants' contractor's use of RGN's office space.

33.     Unbeknownst to Plaintiffs, Perez, McCarthy and Alcantara began using the offices as a Recording Studio to run Heavy without any compensation to Plaintiffs and passed along all related costs to Plaintiffs by falsely claiming that the costs were related to Plaintiffs' rental business and/or concealing the true nature of the costs.

34.     Upon information and belief, Perez, McCarthy, Alcantara and Heavy also charged third-parties for use of the Recording Studio and other office services and kept all proceeds for themselves to Plaintiffs' detriment.

35.     In addition, and unbeknownst to Plaintiffs, Defendants began using office 12032 in the Times Square location as a photography studio to supplement the services offered by Heavy (the "Photo Studio").  Upon information and belief, Perez, McCarthy, Alcantara and Heavy utilized the Photo Studio for their own purposes for free, charged third-parties for the use of the Photo Studio, and kept all proceeds and other benefits for themselves to Plaintiffs' detriment.

36.     In addition, Perez, Alcantara and McCarthy utilized Plaintiffs' office space for a New Year's Eve party on December 31, 2018 without Plaintiffs' knowledge or authorization. Perez, Alcantara and McCarthy charged participants $150 per ticket and provided food and beverages which Perez, Alcantara and McCarthy caused to be charged to Plaintiffs as if they were legitimate expenses for Plaintiffs' business.  Plaintiffs unknowingly paid for the costs related to the New Year's Eve event based on the misrepresentations and/or omissions of Perez, Alcantara and McCarthy as to the true nature of the costs.

37.     In addition, Perez, Alcantara and McCarthy offered private room rentals for an additional cost for the New Year's Eve event.

38.     None of the uses of Plaintiffs' office space on December 31, 2018 by Perez, Alcantara and McCarthy were disclosed to, or authorized by, Plaintiffs.

39.     Furthermore, Perez, Alcantara and McCarthy made arrangements to prepare the relevant office space for the New Year's Eve event by ordering that the space be painted before the event.  Perez, Alcantara and McCarthy submitted or caused the submission of false records to

Plaintiffs asserting that the painting costs were related to Plaintiffs' business when in fact, it was to prepare the space for Perez, Alcantara and McCarthy's unauthorized New Year's Eve event. Perez, Alcantara and McCarthy failed to disclose the true nature of the expenses passed onto Plaintiffs.   Plaintiffs unknowingly paid for the painting costs based on Perez's false representations and Alcantara's and McCarthy's omissions.

40.     In addition, while preparing the space for the New Year's Eve event, Perez, Alcantara and McCarthy ordered food delivery for themselves and others which they falsely billed to Plaintiffs as expenses related to Plaintiffs' business.  Plaintiffs unknowingly paid for the food delivery costs falsely claimed by Perez to relate to Plaintiffs' business. Alcantara and McCarthy concealed from Plaintiffs the true nature of the expenses for food and beverages.

41.     All money received from the New Year's Eve event was retained by Perez, Alcantara and McCarthy.  Plaintiffs did not receive any payment for the use of Plaintiffs' offices and related services during the New Year's Eve event.

42.     In and around February 2019, following Perez being promoted and moved to a new location for Plaintiffs, Plaintiffs soon discovered the fraud which Defendants had been perpetrating on Plaintiffs related to the Recording Studio, Photo Studio, New Year's Eve event and all of the related costs which Perez, McCarthy and Alcantara defrauded Plaintiffs into paying through misrepresentations and concealment.

43.     Upon uncovering the fraud by Defendants, Plaintiffs were required to hire security guards to prevent further unauthorized access to Plaintiffs' office space as Defendants had distributed access cards to various people providing unauthorized access to the Times Square location generally, and to the Recording Studio and Photo Studio.  The distribution of access cards to the Times Square location was done without Plaintiffs' knowledge or authorization.

44. In addition, Plaintiffs were required to change the locks to the Recording Studio and Photo Studio to prevent further unauthorized usage.

45. The Personal Property used in Defendants' unauthorized venture remains secured in Plaintiffs' offices.

46. Although one of the principals of Heavy claimed that the Personal Property belonged to him, he could not provide any evidence as to ownership of the Personal Property. Moreover, the individual presented a fabricated contract for offices 12024 and 12026 in an attempt to claim authorization to use Plaintiffs' office and gain access to the Personal Property.

47. Upon information and belief, the Personal Property was abandoned by a former client of Plaintiffs who defaulted under its contract and moved out leaving the Personal Property behind. Defendants utilized the abandoned Personal Property for their own endeavors without Plaintiffs' knowledge or authorization.

48. Perez, McCarthy and Alcantara, through misrepresentations and concealment of fact, submitted and/or caused the submission of the moving expenses for recording equipment to Plaintiffs and falsely claimed that the moving expenses were legitimate costs related to Plaintiffs' business operations. Plaintiffs unknowingly paid the moving expenses relying upon Perez's representations and being tricked by McCarthy's and Alcantara's concealment.

49. After inspection of the office spaces used by Defendants, Plaintiffs were required to paint and repair the space due to damage caused by Defendants.

50. The unauthorized use of Plaintiffs' office space as the Recording Studio and Photo Studio and the unauthorized charges to Plaintiffs for moving expenses, painting, repairs, food, security guards and changing the locks has caused Plaintiffs damages in excess of $160,000.00.

51.     The Defendants, acting in concert together, engaged in a scheme to steal the use of office space and services from Plaintiffs and use Plaintiffs' property and services to the detriment of Plaintiffs.

52.     Moreover, Perez, Alcantara and McCarthy caused Plaintiffs to pay for expenses related to the New Year's Eve event – which were wholly unrelated to Plaintiffs' business – by making false representations and concealing the nature and purpose of the expenses.

53.     Perez and Alcantara used their positions as employees of Regus to defraud Plaintiffs and usurp corporate opportunities for their own self-interests to Plaintiffs' detriment.

54.     All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I – FRAUD and DECEIT
### (All Defendants)

55.     Plaintiffs restate and incorporate herein the allegations in paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants, acting in concert with one another, made misrepresentations of fact and/or omitted facts to Plaintiffs, related to their unauthorized use of Plaintiffs' office space and related services.  Defendants submitted or caused to be submitted a fabricated contract to Plaintiffs claiming that the office space was being used by a legitimate client of Plaintiffs.

57.     In addition to the misrepresentations, none of the Defendants disclosed to Plaintiffs that they were utilizing Plaintiffs' office space and services without having a valid contract and without compensating Plaintiffs for such use.

58.     In addition, Defendants submitted or caused to be submitted payment requests to Plaintiffs for goods and services by falsely representing such expenses to be related to Plaintiffs'

10

business and/or otherwise concealing through the omission of fact the true nature of their dealings.

59.     Defendants knew that their use was unauthorized and that the representation that a legitimate client was renting the office space was false.

60.     Moreover, Defendants knew that requests for payment for moving expenses, painting and repairs, and food expenses were related to their own unauthorized endeavors, however, Defendants falsely represented that such expenses were related to Plaintiffs' business and/or otherwise concealed through the omission of fact the true nature of the expenses.

61.     Defendants made misrepresentations and concealed their unauthorized use of Plaintiffs' office space to induce Plaintiffs into relying on the false claims that the office space, services and expenses were being used for legitimate purposes consistent with Plaintiffs' business operations.

62.     Plaintiffs were justified in its reliance on the misrepresentations and omissions as it was reasonable to trust Perez and Alcantara as employees of Regus.  Moreover, Plaintiffs had no knowledge that Regus' own employees, former employee and Heavy were committing widespread fraud and deception by manipulating Plaintiffs' business records and concealing the use of Plaintiffs' offices and services.

63.     Moreover, Plaintiffs had no knowledge that Defendants created or caused to be created a false contract for the office space being used.

64.     Furthermore, Defendants falsely submitted, or caused to be submitted, requests for payment for items which benefitted Defendants and not Plaintiffs, without Plaintiffs' knowledge, and Plaintiffs were justified in relying upon Regus' trusted employees.

65.     Defendants' fraudulent acts caused harm to Plaintiffs for which the Defendants are jointly and severally liable.

66.     In addition, Defendants caused damages to the offices utilized requiring Plaintiffs to expend additional money to restore the offices to Plaintiffs' standards.

67.     Moreover, Plaintiffs were required to expend money on security guards and change the locks to the office space to prevent further unauthorized use and damages to the office space.

68.     The damages caused to Plaintiffs by Defendants' fraudulent acts exceed $160,000.00.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants Perez, McCarthy, Alcantara and Heavy, jointly and severally, for all damages caused to Plaintiffs related to the unauthorized use of Plaintiffs' office space and services, as well as the fraudulent costs and expenses passed along to Plaintiffs for costs related to securing the offices and the Personal Property in the office and costs related to repairing the office space and such other relief as the Court deems just and appropriate.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (Perez)

69.     Plaintiffs restate and incorporate herein the allegations in paragraphs 1 through 54 above as if fully set forth herein.

70.     Perez was an employee of Regus, and Regus reposed its trust and confidence in Perez to act as Regus' agent in the operation of Plaintiffs' office rental business.  Furthermore, RGN relied on Regus' employees, including Perez, to act in good faith in conducting business on RGN's behalf.  Perez knowingly accepted that position of trust and confidence.

71.     Plaintiffs relied on and trusted Perez to properly manage the office rentals at RGN's Times Square location on Plaintiffs' behalf including, without limitation, reviewing and analyzing applications for office rentals, assigning appropriate office space to clients, obtaining signed contracts from clients renting office space, monitoring Plaintiffs' clients' usage of the space and ancillary services, properly billing Plaintiffs' clients for the use of the office space and ancillary services, maintaining the office space in a condition to meet or exceed Plaintiffs' standards, monitoring payment from Plaintiffs' clients and properly applying payments received from Plaintiffs' clients.

72.     Furthermore, Plaintiffs relied upon and trusted Perez to act in Plaintiffs' best interests and make his best efforts to generate revenue and profits for Plaintiffs.

73.     As a trusted employee, Perez owed Regus a duty of good faith and loyalty.

74.     As a person trusted with running the daily operations of RGN's office rental business at the Times Square location, Perez owed RGN a duty of good faith and loyalty.

75.     Perez began utilizing RGN's office space and ancillary services for his own benefit and interests adverse to Plaintiffs' interests.

76.     Not only did Perez, with the help of others, remove three offices from Plaintiffs' rental pool for his own benefit, without Plaintiffs' knowledge or authorization, but Perez also charged third-parties a fee to utilize the office space and services and retained the funds for his own benefit.

77.     In addition, using his position as Community Manager Team Leader, Perez submitted bills to Plaintiffs and falsely claimed that the costs and expenses were related to the furtherance of Plaintiffs' business.  In reality, the costs and expenses related to Perez's own

interest and were adverse to Plaintiffs' interests.   Plaintiffs justifiably relied upon the submissions from Perez to pay expenses.

78.     Perez also conspired with his fiancé, McCarthy, to defraud New Client by falsely claiming that New Client would have to enter into a sublease with McCarthy in order to move in on New Client's desired date.   Perez knew that McCarthy had no right to any space in the Times Square location and Perez tricked Plaintiffs' into paying $3,581.58 for his benefit.

79.     Furthermore, using his position as Community Manager Team Leader, Perez operated a New Year's Eve event using Plaintiffs' office space and provided access to third parties for a fee.  This use was not disclosed to Plaintiffs and was an unauthorized and improper use of Plaintiffs' property.   All revenue generated from this event was retained for Perez's benefit and interests to Plaintiffs' detriment.

80.     Perez's acts diverted corporate opportunities from Plaintiffs.

81.     Perez defrauded Plaintiffs' actual client for his own self-dealings.

82.     Perez's disloyalty and lack of good faith caused damages to Plaintiffs.

83.     Perez's misconduct as the Community Manager Team Leader permeated Perez's service to Regus in its most material and substantial part and Perez should not have been compensated by Regus during the time when he was wrongfully operating a business venture using Plaintiffs' resources to Plaintiffs' detriment.

84.     Perez's misconduct and unfaithfulness to Plaintiffs violated his duty of loyalty and duty to act in good faith owed to Plaintiffs.

85.     Perez's breaches of his fiduciary duties owed to Plaintiffs caused Plaintiffs damages including, without limitation, loss of use of office space and services, repair costs, food expenses, cost of security guards, costs to change locks, and lost corporate opportunities.

86.     Moreover, Perez should return all compensation received during the period in which he was unfaithful to Regus, and Regus is entitled to retain any and all unpaid sums.

87.     The damages caused exceed $160,000.00.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant Perez for all damages caused to Plaintiffs related to the unauthorized use of RGN's office space and services as well as unauthorized costs and expenses passed along to Plaintiffs for costs related to securing the offices and the Personal Property in the office and costs related to repairing the office space, for the return of compensation received during his period of misconduct and such other relief as the Court deems just and appropriate.

### COUNT III – BREACH OF FIDUCIARY DUTY
**(Alcantara)**

88.     Plaintiffs restate and incorporate herein the allegations in paragraphs 1 through 54 above as if fully set forth herein.

89.     Alcantara was an employee of Regus and Regus reposed its trust and confidence in Alcantara to act as Regus' agent in the operation of Plaintiffs' business.  Alcantara knowingly accepted that position of trust and confidence.

90.     Plaintiffs relied on and trusted Alcantara to act as Community Associate for Plaintiffs at the Madison, Forest Hills and Brooklyn, New York locations on Plaintiffs' behalf including, without limitation, acting as a point of contact for Plaintiffs' clients, identifying opportunities for Plaintiffs and actively cross-selling and/or upselling Plaintiffs' products and services to contribute to the overall revenue of Plaintiffs, serve as a resource for Plaintiffs' clients for information, and to provide assistance and recommendations to clients to allow Plaintiffs' clients to utilize Plaintiffs' products and services, and generally act as a liaison

between Plaintiffs and their clients.   Moreover, Alcantara was used to assist with tasks at the Times Square location on occasion.

91.     Furthermore, Plaintiffs relied upon and trusted Alcantara to act in Plaintiffs' best interests and make his best efforts to generate revenue and profits for Plaintiffs.

92.     As a trusted employee, Alcantara owed Regus a duty of good faith and loyalty.

93.     As a person trusted with running the daily operations of RGN's office rental business at the Times Square location, Perez owed RGN a duty of good faith and loyalty.

94.     Alcantara assisted Perez with running an unauthorized business venture utilizing Plaintiffs' resources without compensation.

95.     Alcantara participated in the operation of the unauthorized Recording Studio and Photo Studio and concealed the wrongful use of Plaintiffs' resources from Plaintiffs.

96.     In addition, Alcantara participated in the New Year's Eve event where Plaintiffs' office space and services were unlawfully used to generate revenue for Perez and others to Plaintiffs' detriment.

97.     Rather than disclose the misuse of Plaintiffs' office rental business to Plaintiffs or identify the New Year's Eve event as an opportunity for Plaintiffs, Alcantara assisted Perez in defrauding Plaintiffs.

98.     Participating in the unauthorized use of the Recording Studio and Photo Studio, Alcantara acted in his own self-interests and usurped a corporate opportunity to the detriment of Plaintiffs.   Alcantara's misconduct breached his duties of loyalty and good faith owed to Plaintiffs.

99.     Moreover, Alcantara's participation in the unlawful New Year's Eve event was for his own self-interest and caused a usurpation of a corporate opportunity to the detriment of

Plaintiffs.  Alcantara's misconduct also breached his duties of loyalty and good faith owed to Plaintiffs.

100.    Alcantara knew that the use of the Recording Studio and Photo Studio was not authorized, and he concealed this activity from Plaintiffs.

101.    Alcantara also knew that the use of office space for a New Year's Eve event was not authorized, and he concealed this activity from Plaintiffs.

102.    Alcantara's acts diverted corporate opportunities from Plaintiffs.

103.    Alcantara's disloyalty and lack of good faith towards Plaintiffs as a Community Associate permeated Alcantara's service to Plaintiffs in its most material and substantial part.

104.    Alcantara's misconduct and unfaithfulness to Plaintiffs violated his duty of loyalty and duty of good faith owed to Plaintiffs.

105.    Alcantara's breaches of his duty of loyalty and duty of good faith and fair dealing owed to Plaintiffs caused Plaintiffs damages including, without limitation, loss of use of office space and services, repair costs, cost of security guards, costs to change locks, and lost corporate opportunities.

106.    Moreover, Alcantara should return all compensation received during the period in which he was unfaithful to Plaintiffs.

107.    The damages caused by Alcantara exceed $160,000.00.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant Alcantara for all damages caused to Plaintiffs related to the unauthorized use of Plaintiffs' office space as an unauthorized Recording Studio and Photo Studio, for the unauthorized use of Plaintiffs' office space for the New Year's Eve event and related costs improperly passed along to Plaintiffs, for costs related to securing the offices and the Personal

17

Property in the office and costs related to repairing the office space, for the return of compensation received during his period of misconduct and such other relief as the Court deems just and appropriate.

<u>COUNT IV – UNJUST ENRICHMENT</u><br>
<b>(All Defendants)</b>

108.    Plaintiffs restate and incorporate herein their allegations in paragraphs 1 through 54 above as if set forth fully herein.

109.    Perez, McCarthy, Alcantara and Heavy began improperly utilizing Plaintiffs' office space and ancillary services for their own benefit and interests adverse to Plaintiffs' interest.

110.    Defendants began using Plaintiffs' premium commercial real estate and ancillary services to operate a Recording Studio and Photo Studio without compensating Plaintiffs for this use.

111.    Plaintiffs unknowingly allowed Defendants to operate their venture from Plaintiffs' property and to utilize Plaintiffs' office services, however, Plaintiffs did not receive any compensation.

112.    A reasonable person would expect to pay for commercial rental space made available through Plaintiffs' business and would expect to pay for ancillary services related to the use of that commercial space.

113.    In addition, a reasonable person would expect to pay for any damages caused to commercial office space.

114.    Plaintiffs did not receive any compensation related to Defendants' use of Plaintiffs' office space or related resources.

115.    Defendants benefitted from the use of Plaintiffs' commercial office space and services.

116.    It would be against equity and good conscience to allow Defendants to use Plaintiffs' commercial real estate space and other resources without paying market rental rates for the use of the offices and relates services, plus the costs of restoring the property to commercial rental standards.

117.    The value of Plaintiffs' products and services which Defendants used without compensation exceeds $160,000.00.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants Perez, Alcantara, McCarthy and Heavy, jointly and severally, for the value of Plaintiffs' products and services which Defendants used without compensation, and such other relief as the Court deems just and appropriate.

### COUNT V – FRAUD AND DECEIT
#### (Perez and McCarthy)

118.    Plaintiffs restate and incorporate herein their allegations in paragraphs 1 through 54 above as if set forth fully herein.

119.    Perez and McCarthy falsely represented to New Client that in order to move into Plaintiffs' office space on the date desired, New Client would need to enter into a sublease with McCarthy because she had the contractual rights to the office at issue.

120.    McCarthy was a former Community Manager for Plaintiffs and never had the rights to rent any office space at Plaintiffs' Times Square location.  Moreover, McCarthy did not have any rights to sublease to New Client.

121.    Through false claims and artifice, Perez and McCarthy tricked one of Plaintiffs' clients into paying $3,581.58 to enter into a fictitious sublease with McCarthy.

122.    Plaintiffs had no knowledge of the fraud and deception perpetrated on Plaintiffs' client by Perez and McCarthy.

123.    Upon discovery of the fraud and deception, Plaintiffs repaid to their client $3,581.58 to restore New Client to the position it would have been in but for Perez and McCarthy's fraud.

124.    In addition, Perez and McCarthy, acting together, falsified records to deceive Plaintiffs into believing that New Client was using three (3) offices when, in fact, New Client only contracted to use two (2) offices.

125.    The extra office removed from Plaintiffs' rental pool by Perez and McCarthy's fraud and deceit – office 12026 – was used to run the unauthorized Recording Studio without compensating Plaintiffs.

126.    Perez and McCarthy's fraud caused Plaintiffs damages for, among other things, the repayment of the $3,581.58 to New Client, loss of use of office 12026, wrongful payment for food and other services which benefitted Perez and McCarthy which were fraudulently billed to Plaintiffs, and the improper use of Plaintiffs' offices and services in connection with the New Year's Eve event hosted by Perez and McCarthy without Plaintiffs' knowledge or authorization. In addition, the damages to the offices and the cost to secure and repair were also caused by Perez and McCarthy's fraud and deceit.

127.    The damages caused by Perez's and McCarthy's fraud exceeds $75,000.00.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants Perez and McCarthy, jointly and severally, for all damages caused to Plaintiffs related to the fraud committed through the false sublease to New Client, the unauthorized use of Plaintiffs' office space as an unauthorized Recording Studio, for the unauthorized use of

Plaintiffs' office space for the New Year's Eve event and related costs improperly passed along to Plaintiffs, for costs related to securing the offices and the Personal Property in the office and costs related to repairing the office space and such other relief as the Court deems just and appropriate.

**COUNT VI – ACTION TO COMPEL**
**<u>DETERMINATION OF A CLAIM TO REAL PROPERTY</u>**
**(All Defendants)**

128.    Plaintiffs restate and incorporate herein its allegations in paragraphs 1 through 54 above as if set forth fully herein.

129.    This is an action to determine that Defendants have no rights to Plaintiffs' property under NY Real Property Actions L § 1501.

130.    Plaintiffs claim an interest in Times Square real property located at 1501 Broadway, 12th Floor, New York, New York 10036 (the "Premises").  RGN has the right to rent office space at the Premises under a lease with the building owner, and Regus is authorized to operate the rental business at the Premises on RGN's behalf and as its agent.

131.    Defendants may claim a right to the offices they used without Plaintiffs' authorization – 12020, 12024, 12026 and 12032 – based on their prior unlawful usage of the same.

132.    Plaintiffs require a determination that Defendants have no lawful claim to any of the offices at the Premises.

133.    Defendants obtained use of the four offices at the Premises by use of fraud and deceit.

134.    Defendants never compensated Plaintiffs for use of the office space.

135.    Defendants never had a valid agreement permitting their use of the office space.

21

136.    RGN has the lawful right to use all of the offices located at 1501 Broadway, 12th Floor, New York, New York 10036 under a lease with the building owner and RGN has paid for all rights to exercise control over those offices.  Regus is authorized to use the offices at the Premises to operate RGN's office rental business.

WHEREFORE, Plaintiffs respectfully request that this Court determine that Defendants Perez, McCarthy, Alcantara, and Heavy never had any possessory rights related to the office space located at 1501 Broadway, 12th Floor, New York, New York 10036 and that any claim to the contrary by Defendants be resolved in Plaintiffs' favor, and for such further relief as the Court deems fair and just.

## COUNT VII – DECLARATORY RELIEF
### (All Defendants)

137.    Plaintiffs restate and incorporate herein its allegations in paragraphs 1 through 54 above as if set forth fully herein.

138.    Plaintiffs request that the Court exercise supplemental jurisdiction over this cause of action as it arises from the same events, transactions and occurrences, and involves the same parties to this action and therefore, is substantially related to the original claims that it forms part of the same case or controversy.

139.    Plaintiffs are in possession of the Personal Property used in connection with the unlawful Recording Studio and Photo Studio consisting of sound equipment, recording devices, hard drives and similar property, which was discovered in Plaintiffs' offices after the fraud by Defendants was uncovered.

140.    Defendants, their principals, associates, affiliates or other related party may claim ownership to the property.  However, to date, Plaintiffs have not been able to ascertain proper ownership of the property.

141.    On information and belief, the Personal Property was abandoned by a former client of Plaintiffs, and Defendants began using the Personal Property without any ownership rights or other authority to do so.

142.    Plaintiffs seek a determination as to the ownership of the Personal Property so that it may be properly disposed of or returned to the lawful owner.

143.    Plaintiffs are uncertain of their rights to the Personal Property or their obligations to maintain the Personal Property and seek declaratory relief from the Court to direct the proper disposition of the Personal Property.

144.    Plaintiffs further submit that they should be reimbursed for all costs incurred in securing and seeking the return of the Personal Property by anyone determined to be the rightful owner.

145.    Regardless of who owns the Personal Property, it was improperly left in Plaintiffs' offices forcing Plaintiffs to take action to secure the Personal Property and Plaintiffs should be compensated for the same.

WHEREFORE, Plaintiffs respectfully request that the Court determine ownership of the Personal Property used in the Recording Studio and Photo Studio left behind in Plaintiffs' office space and for an order directing the owner of such Personal Property to compensate Plaintiffs for the costs of securing, storing and returning such Personal Property.

Dated: July 19, 2019                    **LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ Bradley Bartolomeo
Bradley Bartolomeo, Esq.
*Attorneys for Plaintiffs*
77 Water Street, Suite 2100
New York, New York 10005
212-232-1300
Bradley.Bartolomeo@lewisbrisbois.com

23

SHANKMAN LEONE, P.A.

*/s/ David S. Shankman*
David S. Shankman
Florida Bar Number: 0940186
E-Mail: dshankman@shankmanleone.com
Mitchell C. Robiner
Florida Bar Number:126705
E-Mail: mrobiner@shankmanleone.com
707 N. Franklin Street, Fifth Floor
Tampa, Florida 33602
Telephone: (813) 223-1099
Facsimile: (813) 223-1055
*Attorneys for Plaintiffs*
*Pro Hac Vice Admission to be Sought*